**TINA KRUSE, Petitioner,**

**v.**

**PERSONNEL ADVISORY BOARD, Respondent,**

**and**

**AMERICAN SAMOA GOVERNMENT, Real Party in Interest.**

High Court of American Samoa
Appellate Division

AP No. 13-97

April 21, 1998

Before RICHMOND, Associate Justice, WARD, Acting Associate Justice, TUA`OLO, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Petitioner, Charles V. Ala`ilima
        For Respondent and Real Party in Interest, Gwen Tauiliili-Langkilde, Assistant Attorney General

OPINION AND ORDER

This action is for judicial review of a final administrative decision, pursuant to A.S.C.A. § 4.1040 of the administrative procedures act. Petitioner Tina Kruse ("Kruse") has petitioned for review of a decision

adverse to her by respondent Personnel Advisory Board ("PAB"). PAB is an agency of real party in interest American Samoa Government (ASG).

## Context of the Controversy

Kruse, a career service employee, was promoted to the position of Program Director for Instructional Resources in ASG's Department of Education on January 5, 1992. PAB Transcript, Exhibit L. This personnel action raised her position classification and pay level to Grade 15, step 2, at an annual salary of $22,755. *Id.* By 1996, Kruse had received two salary step increments, increasing her annual salary to Grade 15, step 4, at $24,835. PAB Transcript, Exhibit K. On November 14, 1996, Kruse's salary was increased to $31,075, a raise of six additional steps to Grade 15, step 10. PAB Transcript, Exhibit J. Her job title, however, remained the same. *Id.*

On January 3, 1997, a new administration took office. On January 27, 1997, the incoming Governor of American Samoa issued General Memorandum No. 22-97, which directed the 'roll-back' of pay increases granted to all ASG employees on or after March 1, 1996 to salary levels in effect on February 29, 1996, excepting salary step increments. PAB Transcript, Exhibit B. On March 20, 1997, the Director of Human Resources reduced, by 'pay adjustment,' Kruse's compensation level to Grade 15, step 5, effective March 9, 1997, leaving her only with a salary step increment to Grade 15, step 5. Kruse appealed her pay reduction to PAB. PAB upheld the Director's action, and Kruse petitioned for judicial review.

## Discussion

■■■ This controversy focuses on practices affecting the compensation of ASG's classified career service employees. The career service statutes serve the enacted public purpose of establishing a personnel administration system, which provides "equitable treatment of employees" and "a merit system based on recognized principles of appointment, promotion, termination, and other aspects of government employment." A.S.C.A. § 7.0201.

A comprehensive scheme of statutes and rules regulates the personnel administration system. *See* A.S.C.A. §§ 7.0101-.1513; A.S.A.C. §§ 4.0101-.1448. Compensation of classified career service employees who are not teachers or laborers, is governed under the broad principle of "equal pay for substantially equal work." A.S.A.C. § 4.0403(b).

The overall regulatory scheme contemplates not only that individual employees will receive fair and impartial treatment by ASG, but also that all employees may expect that all persons in like classes of position with comparable, satisfactory years of service in such positions will be compensated equally. Further, all employees in the career service may expect that career advancement will be based upon merit and processed, reviewed, and authorized as provided by law.

Before proceeding further, we will first identify and define the terms and procedures commonly used to describe and prescribe increases in a career service employee's compensation.

■ The term "salary step increment" is not specifically defined in the government personnel rules in the administrative code, but it is substantially described as within grade increases from one step to the next step after receiving a satisfactory performance evaluation. *See* A.S.A.C. § 4.0409; *see also* A.S.A.C. § 2.0104. The rules contemplate that salary step increments will be given annually upon qualification. A.S.A.C. § 4.0409(a).

■ The term "pay adjustment" refers to "a change in the rate of compensation due to revision of the salary schedules of ASG or for reasons not covered elsewhere." A.S.A.C. § 4.0296. Although this term is defined, it is not used elsewhere in the administrative code.

■ The term "promotion" is defined as "a change of an employee from a position in one class to a position in a class having a higher salary range." A.S.A.C. § 4.02111. The procedures governing personnel demotions and other specified adverse actions are set forth under A.S.A.C. § 4.0802.

■ Finally, the term "reclassification" is neither defined nor substantively set forth in the administrative code. The term used in the personnel rules is "classification." A.S.A.C. § 4.0401-.0414. "Reclassification," as that term is used when upgrading or downgrading a present position, is more precisely described in the administrative code as "the changing of any position from one class to another class whenever warranted by significant change in position duties and responsibilities or class definition, or to correct an error." A.S.A.C. § 4.0404(4)

"Reclassification" as a *bona fide* personnel term may owe its currency to the Shortfall Rectification Program of 1983, embodied in the administrative code at A.S.A.C. §§ 2.0101-.0110. This chapter specifically addressed "reclassifications and promotions" at A.S.A.C. § 2.0105.

Applying these terms and procedures to the facts of this case, we first note that on August 22, 1996, the Deputy Director of Education for Administrative Services recommended that Kruse be "promoted" or "reclassified" from Grade 15, step 5 to Grade 16, step 5. PAB Transcript, Exhibit E.

Nonetheless, on October 18, 1996, the Acting Director of Program Planning and Budget Development advised the Director of Education in writing that the "promotion" requested for Kruse to grade 16, step 5 ($29,172 per annum) would not be approved as submitted: "We understand that Classification Division of Department of Human Resources could not actualize this action as the position itself is classified at a Grade 15 level. However, they instead chose to classify her to Grade 15, step 10 (a jump of 6 increment steps) or the equivalent of $31,075." PAB Transcript, Exhibit D.

Subsequently the Director of Education concurred with this course of action and submitted a form to the Office of Program Planning and Budget Development deleting a vacant clerk's position to free up $5,331.00 for funding Kruse's salary increase. PAB Transcript, Exhibit F.

Then, in late January 1997, the newly inaugurated Governor initiated his "roll-back" program, and in March 1997, the Director of Human Resources duly reduced Kruse's compensation back to Grade 15, step 5, leaving her with only her annual step increment to step 5 as additional compensation. This personnel action was designated a "pay adjustment."

PAB heard this matter on July 7, 1997. On July 10, 1997, PAB issued a decision upholding the "roll back" of Kruse's salary because Kruse's upward "pay adjustment" was unbudgeted and thus unlawful. PAB "Finding of Facts, Conclusion of Law and Decision." PAB also found that "if Ms. Kruse's duties responsibilities were changed, she should be reclassified and budgeted accordingly in FY 1998." *Id.*, Finding of Fact No. 4.

Under A.S.C.A. § 4.1044, the court may reverse, modify or remand the decision of an agency "if substantial rights of the petitioner have been prejudiced" because the agency's decision was improper or unlawful as specified under one or more of subsections (1)-(6) of this statute. The threshold question becomes, "has Kruse demonstrated that the agency decision prejudices any of her substantial rights?" We must answer in the negative.

Kruse's "basic salary rate," see A.S.A.C. § 4.0217, was increased under the guise of a "pay adjustment." As the record before the PAD reveals,

7

the only legitimate method of increasing a classified employee's basic salary rate (other than by annual salary step increments or special incentive awards prescribed by rule) is by a change in classification of the employee's position or by the employee's promotion to a higher paid position. *See* PAP Transcript, generally at 20-23 and specifically at 32.

■ PAP found that Kruse's salary increase was a "pay adjustment." Although "pay adjustment" is a defined term, no procedures have been adopted to implement its impartial use within the merit system of the career service. Until administrative rules are duly adopted establishing fair procedures for implementing a "pay adjustment" process, *ad hoc* salary increases that result in disparate compensation rates for career service employees of similar grade and seniority in comparable positions violates the stated principle of "equal pay for substantially equal work."

■ The Department of Human Resources declined the original request to either 'promote' Kruse or change the classification of her position to a higher grade resulting in an anticipated annual salary of approximately $29,000. Instead of following legally established procedures for a promotion or change in classification, which could have legitimately resulted in a valid increase of Kruse's annual salary to the $29,000 level, the Department of Human Resources followed no procedures and simply awarded a six step raise in the same grade.

The Director of Program Planning and Budget Development did not object; the Director of Education did not object, and Kruse, whose maximum legal salary increase under a promotion or change in classification was planned at approximately $29,000, certainly did not object to a $31,075 annual salary.

■ Even if this court were to seriously entertain Kruse's argument that a "pay adjustment," by virtue of being defined, operates as a legal basis for salary increases "for reasons not covered elsewhere" in the personnel rules, Kruse's initial personnel action request was for a "promotion" or "change of classification" as originally requested by the Deputy Director of Education for Administrative Services. Even assuming for sake of argument that a "pay adjustment" may be validly utilized to increase compensation in certain specific cases, the definition of "pay adjustment" precludes its application to a personnel request for promotion or change in classification.

## Conclusion

We note the irony of the current administration's use of the term "pay adjustment" in PAB Transcript, Exhibit A to describe Kruse's salary roll back because her upward "pay adjustment" was unlawful. We need not,

however, reach the paradoxical conclusion that two wrongs make a right to decide this matter. We simply hold that Kruse could obtain no right (substantial or otherwise) to a compensation rate established in violation of the prescribed merit-based administrative procedures for career service employees.

Since we have decided that Kruse had no rights to the increased level of compensation which could have been prejudiced by PAB's decision, we decline to further investigate the legality of the procedures whereby the Director of Human Resources corrected this unlawful compensation rate.

As PAB recognized, Kruse may well deserve a promotion or a change of classification of her position. If there are funds available and such action is justified, Kruse would be entitled to all procedural rights and safeguards in pursuing such legitimate goals, including the right to grieve and appeal adverse decisions on such lawful request. Further, if Kruse believes that she has suffered compensable damages as a result of PAB's action in the instant matter, she may pursue her legal (or equitable) remedies in a court of general jurisdiction.

### Order

The PAB decision of July 11, 1997 is affirmed as modified by this opinion and order.

It is so ordered.